UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA LINER,

            Plaintiff, *pro se*,

– against –

KATHY HOCHUL, GOVERNOR;
OFFICER MICHAEL DAVID 40TH
PRECINCT; JOHN DOE #1 OFFICER
40TH PRECINCT; *and* JOHN DOE #2
OFFICER 40TH PRECINCT,

            Defendants.

**OPINION & ORDER**

21-cv-11116 (ER)

Ramos, D.J.:

    Joshua Liner, proceeding *pro se*, brings this action for damages and injunctive relief, alleging that New York Governor Kathy Hochul, Police Officer Michael David, unidentified Police Officers "John Doe 1" and "John Doe 2" (collectively, "Defendants") violated his federal constitutional rights. Doc. 1. The Court construes Liner's complaint as asserting claims under 42 U.S.C. § 1983. Governor Hochul brings the instant motion to dismiss Liner's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Doc. 25. For the reasons set forth below, Governor Hochul's motion to dismiss is GRANTED.

    **I.**    **BACKGROUND**

        **A. Factual Background**

    Liner alleges that a man named Ramon Alvarez illegally resided in a house[1] owned by Liner for nearly sixteen months without paying rent. Doc. 1 at 4. Liner alleges, among other

---

[1] Liner has referred to the residence in question as both a house and an apartment. *See* Doc. 1 at 9; Doc. 35 at 3.

things, that Alvarez ignored eviction papers, filed false claims in court, stole several items from the residence, left the lights on all night, continuously fought with his girlfriend, and broke the front door lock and two microwaves. *Id.* at 9–10.  Liner further alleges that Alvarez made allegations of harassment against him, and that in response, Defendants John Doe 1 and John Doe 2 woke him from his sleep and unlawfully arrested him. *Id.* at 4.  Liner also claims that Police Officer Michael David unlawfully arrested him on November 23, 2021 in response to Alvarez's allegations. *Id.* at 7.  It is unclear from the complaint whether Liner is asserting that the three police officer Defendants arrested him one time, on November 23, 2021, or whether he is alleging two separate arrests.  In the complaint, Liner also alleges that he was racially discriminated against by John Doe 1 on November 23, 2021, and that the Defendants were part of a conspiracy to violate state and federal laws. *Id.*  Additionally, Liner alleges that he experienced emotional stress and heart problems, and has twice been taken to the hospital by ambulance, as a result of these actions. *Id.* at 5.

Liner claims that Governor Hochul's Executive Order ("EO") prevented him from being able to evict Alvarez, and that the officers told him Alvarez could not be evicted. *Id.* at 4, 10.  Liner also claims that Governor Hochul "agreed on national television to pay rent for squatters." Doc. 23 at 1.  Liner first filed the complaint against Governor Hochul on December 27, 2021, *see* Doc. 1, and later wrote to the Court on June 7, 2022, explaining that Alvarez has since left the premises without paying for bills, damages, or rent.  Doc. 18 at 3.

Though Liner does not specify which EO he is referring to, Governor Hochul notes that her predecessor, Governor Cuomo, issued EO 202.28 on May 7, 2020 in response to the COVID-19 pandemic.  Doc. 26 at 8.  This EO imposed eviction moratoriums for certain tenants in New York, and was later extended by Governor Cuomo until June 14, 2021. *Id.*  Additionally,

Governor Cuomo signed the COVID-19 Emergency Eviction and Foreclosure Prevention Act ("CEEFPA") on December 28, 2020. *Id.* Governor Hochul assumed the office of Governor on August 24, 2021, and signed an extension of CEEFPA on September 2, 2021. *Id.* at 8, 12. The extension of CEEFPA protected tenants from eviction until January 15, 2022. *Id.* at 8.

### B. Procedural History

Liner's original complaint sought $250,000 for emotional distress, $250,000 for unlawful arrest, $250,000 in punitive damages, $7,500 for rent payments, and the removal of Alvarez from his residence. Doc. 1 at 5, 8, 11. The original complaint brought claims against the State of New York, Governor Hochul, Ramon Alvarez, Police Officer Michael David, and John Does 1 and 2. *Id.* at 1. On March 17, 2022, the Court directed the City of New York to provide Liner with the identities of the "John Doe" defendants.[2] Doc. 10 at 1.

In the same March 17 Order, the Court dismissed Liner's claims against the State of New York, finding that the claims were precluded under the doctrine of Eleventh Amendment immunity. *Id.* at 2–3. The Court also dismissed Liner's § 1983 claims against Alvarez for failure to state a claim on which relief may be granted, given that Alvarez is a private individual and not a state actor. *Id.* at 3–4. The Court also directed Liner to serve summonses and the complaint on Governor Hochul and Officer David within ninety days of their issuance. *Id.* Additionally, the Court warned Liner that it may dismiss his claims against Governor Hochul and Officer David if he failed to serve the summonses or request an extension before the

---

[2] On October 31, 2022, pursuant to a *Valentin* order, the City submitted a letter to the Court noting that Liner executed two releases regarding his arrests, but that the releases did not have sufficient information to identify the officers who participated in the arrests alleged in the complaint. Doc. 34 at 1–2. Specifically, Liner did not include the dates of the arrests. *Id.* Based on these releases, the City was unable to identify the officers from the arrest alleged to have taken place on November 23, 2021, but was able to identify two officers from a separate arrest of Liner. *Id.* at 2. The City identified Police Officer Marcus Andrew and Sergeant Jamar Lamey in connection with an arrest that took place on May 31, 2021. *Id.* However, it is unclear whether these officers are Defendants John Doe 1 and John Doe 2 from the complaint.

3

deadline. *Id.* The Clerk of Court issued the summonses against these Defendants on March 18, 2022. Doc. 11. Liner filed a request for a thirty-day extension on June 7, 2022, and the Court extended the deadline for service to July 18, 2022. Docs. 18, 19. Also on June 7, Liner informed the Court that he attempted to serve Officer David, but was unsuccessful. Doc. 18 at 2.

Governor Hochul submitted a letter to the Court on July 5, 2022 noting that Liner had not properly served her, but nevertheless she requested leave to file a motion to dismiss. Doc. 21. During a pre-motion conference held on July 27, 2022, Liner explained that he attempted to serve Officer David in person and later sent a certified mail return receipt, but said that the paperwork may have been damaged and was uncertain of what happened. Doc. 35. Thus, it is unclear whether Liner has actually served Officer David in this case. On August 17, 2022, Governor Hochul filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Doc. 25.

On November 16, 2022, the Court instructed Liner to serve the summonses as to Governor Hochul and Officer David no later than December 16, 2022, specifying that failure to do so would result in dismissal for failure to execute service under Federal Rule of Civil Procedure 4(m). Doc. 37.

## II.     LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first. *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F.Supp.2d 490, 499 (S.D.N.Y.2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

### B. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). The Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual

allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as the Second Circuit has held, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

### III.  DISCUSSION

#### A.  Eleventh Amendment Immunity

Governor Hochul argues that she is entitled to Eleventh Amendment immunity, and thus Liner's claims should be barred. Doc. 26 at 10. The Court previously discussed Eleventh Amendment immunity in its order dismissing Liner's claims against the State of New York. Doc. 10 at 2. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). Here, Liner's arguments relating to Governor Hochul are based entirely on her actions as Governor, and therefore her actions as an agent of the state. Therefore, Liner's claims against Governor Hochul in her official capacity are claims against the state itself. "The immunity recognized by

the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks and citation omitted).

Congress has not abrogated the States' immunity for claims under § 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment thus precludes Liner's claims under § 1983 against Governor Hochul. *See Green v. Mansour*, 474 U.S. 64, 73 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). Accordingly, the Court dismisses Liner's claims against Governor Hochul for lack of subject matter jurisdiction.[3]

### B. Qualified Immunity

Governor Hochul also contends that, should Liner's claims be interpreted as being brought against Governor Hochul in her individual capacity, such claims should be barred under the doctrine of qualified immunity. Doc. 26 at 14. "The doctrine of qualified immunity shields government employees from civil liability where performance of their discretionary functions 'does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 411 (S.D.N.Y. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[3] A limited exception to Eleventh Amendment immunity under *Ex Parte Young*, 209 U.S. 123 (1908) allows for suits for prospective injunctive and declaratory relief against state officials in their official capacities. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 448 (S.D.N.Y. 2011). However, this exception is inapplicable in this case as the only non-pecuniary prospective relief Liner seeks is the removal of Alvarez. Liner's request for injunctive relief on this issue is moot as Alvarez has left the premises since this action commenced. Doc. 18 at 3.

Reading Liner's claims as being brought against Governor Hochul in her individual capacity, Governor Hochul would be entitled to qualified immunity (1) if the conduct attributed to her was not prohibited by federal law; or (2) where the conduct was so prohibited, if Liner's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if Governor Hochul's actions were objectively legally reasonable in light of the legal rules that were clearly established at the time they were taken. *See Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (internal citations omitted).

Only one prong is needed for Governor Hochul to be entitled to qualified immunity. Liner claims that Governor Hochul lacks qualified immunity because she disregarded Supreme Court precedent.[4] *See* Doc. 31 at 1. Here, it is clear that Governor Hochul did not violate Liner's rights by signing an extension of CEEFPA, given existing case law upholding similar action. *See Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020), *appeal dismissed sub nom. 36 Apartment Assocs., LLC v. Cuomo*, 860 F. App'x 215 (2d Cir. 2021) (upholding EO 202.28 because it did not permanently prevent landlords from collecting rent from tenants once the EO expired); *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425 (S.D.N.Y. 2022) (upholding state restrictions implemented due to COVID-19 public health concerns). Thus, Governor Hochul is entitled to qualified immunity with respect to Liner's § 1983 claims as her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

### C. Personal Involvement of Governor Hochul

---

[4] Governor Hochul assumes that Liner is referencing *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021), which struck down a previous version of CEEFPA for violating the due process clause because it precluded landlords from contesting the self-certification of financial hardship of tenants facing eviction. *Chrysafis* does not alter the analysis on qualified immunity in this case, as the actions of Governor Hochul in signing the CEEFPA extension bill did not violate clearly established rights. Indeed, Governor Hochul's extension of a modified version of CEEFPA, which contained a due process mechanism, came after *Chrysafis*. 2020 N.Y. Sess. Laws ch. 381 (McKinney).

Additionally, Governor Hochul argues that she lacks personal involvement sufficient to sustain Liner's claim against her, as she was not involved with the actions of Alvarez or the police officer Defendants about which Liner complains. Doc. 26 at 12. The closest Liner gets to alleging personal involvement by Governor Hochul is his allegation that she "agreed on national television to pay rent for squatters." Doc. 23 at 1. Regarding state action relating to COVID-19, Governor Hochul notes that the EO on eviction moratoriums expired on June 24, 2021, and she did not become Governor until August 24, 2021. Doc. 26 at 8, 12. However, she did sign an extension of CEEFPA on September 2, 2021, which protected tenants from eviction until January 15, 2022. *Id.* at 8.

It is well settled that a defendant in a § 1983 suit may not be held liable for an award of damages to a plaintiff absent "personal involvement" in the conduct resulting in a constitutional violation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). Liner must therefore plead that Governor Hochul, through her own actions, committed the alleged violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, Liner's allegations do not provide a sufficient basis from which this Court can conclude that Governor Hochul had any personal involvement in the alleged violations of his constitutional rights. Additionally, Liner's claims against Governor Hochul are insufficient in that they are based solely on the fact that she held the position of Governor. "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citation omitted). Thus, Governor Hochul lacks sufficient personal involvement, and Liner's claims against her must be dismissed for failure to state a claim.

### D. Leave to Amend

Governor Hochul argues that Liner should be denied leave to amend his complaint against her. Doc. 26 at 16. Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading as a matter of course 21 days after serving it, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend. *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).

Additionally, the Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations omitted). However, where the amendment would be futile or would result in undue prejudice to the opposing party, denying leave to amend is proper. *Holmes*, 568 F.3d at 334. An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999).

Here, Liner has not alleged any facts that would give rise to a cognizable claim against Governor Hochul under § 1983. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Because Liner's claims against Governor

Hochul are based on her actions as a state actor, any leave to amend would be futile. Therefore, the complaint is dismissed without granting leave to amend.

### IV.  CONCLUSION

For all these reasons, Governor Hochul's motion to dismiss is GRANTED with prejudice. The Clerk of Court is respectfully directed to terminate the motion, Doc. 25, and mail a copy of this order to Liner.

SO ORDERED.

Dated:   January 23, 2023
         New York, New York

_____
Edgardo Ramos, U.S.D.J.